### Nicholas Boul

*v.*

### The People *ex rel.* James D. Baker, Collector.

*Filed at Mt. Vernon January 26, 1889.*

1. DRAINAGE LAW—*re-classification of lands—extension of tax on that basis.*  The new classification of lands specially benefited, as authorized by section 21 of the act of 1885, is intended to correct errors in the prior one; and when made, taxes levied for the payment of prior indebtedness of the district will be extended on the basis of the re-classification.

2. On April 4, 1885, certain drainage commissioners made an assessment of $28,000, in addition to one previously made, payable, one-third October 1, 1886, one-third October 1, 1887, and one-third October 1, 1888, on which assessment the commissioners borrowed $26,000, issuing bonds dated October 30, 1885, $8000 payable in two years, $8000 in three years, and $10,000 in three years and eleven months.  Prior to April 25, 1887, lands in the district were not assessed for benefits, at which time a re-classification was made, by which they were made assessable.  The tax levied to pay the principal and interest of the second installment of bonds, and the interest on the third installment, was extended on the basis of the re-classification: *Held*, that the tax was properly extended upon that basis.  The owners acquired no rights under the first assessment of benefits, but enjoyed only the benefit of a mistake.

APPEAL from the County Court of St. Clair county; the Hon. JOHN B. HAY, Judge, presiding.

Mr. FRANKLIN A. McCONAUGHY, for the appellant:

The improvements or work contemplated and executed under the first and second assessments were held by the commissioners not to be of benefit to this property, and doubtless this was the case; and now, when other work is about to be begun, and it is properly determined that this will benefit the property, the appellant is perfectly willing to bear his share of the burden.  This is certainly what was intended by the General Assembly when it provided for these classifications. The language of section 21 of the act of 1885 (Sess. Laws of

1885, p. 85,) is: "In districts heretofore formed, which have made one or more levies of taxes, and a new levy is required, the classification of lands on the graduated scale shall be made to conform," etc. It is perfectly clear from this language that no old levies are referred to. But, here, we are asked to pay old levies on the basis of a new classification.

Now, when this assessment was made, and it was provided that it should be paid in three installments, the law stepped in, and said that these installments should "be a lien upon the lands assessed until paid." Hence the effect of the course here pursued would be to raise these levies from the lands assessed, and put them upon lands not assessed, without a hearing, and without regard to the fact that the lands have been bought and sold in the district with reference to these liens. The mere statement or proposition carries with it every reason that these liens can not be disturbed.

The law provides that the commissioners shall report what lands are benefited at the time of this assessment. (Starr & Curtis' Stat. chap. 42, sec. 34, clause 5.) And this court has held that when this report was confirmed, it became *res judicata. Owners of Lands* v. *People ex rel.* 113 Ill. 296.

To thus shift and change about liens established on these lands, as this construction would require, seems to counsel to violate the provision of the constitution which inhibits the General Assembly from enacting a law "impairing the obligation of contracts." Constitution of 1870, art. 2, sec. 14; *Gunn* v. *Barry*, 15 Wall. 610; *Bruce* v. *Schuyler*, 4 Gilm. 221; *People* v. *Riggs*, 56 Ill. 483; *Ramsey* v. *Hoeger*, 76 id. 432; *Bruffett* v. *Railroad Co.* 25 id. 353.

There is no doubt that the effect of all this is to extend a tax for one year, made with reference to a certain assessment, upon the assessment of another year, and doubtless for a different purpose. This is clearly against the principles laid down by this court in a number of cases. *Town of Lebanon* v. *Railway Co.* 77 Ill. 539; *Graves* v. *Bowen*, 11 id. 431; *Bill-*

16—127 ILL.

*ings* v. *Dilten*, 15 id. 218; *Thurston* v. *Little*, 3 Mass. 429; *Grangers* v. *Power*, 2 Pick. 392.

It is very clear that if the construction of section 21 of the act of 1885, which will be insisted upon by the opposing counsel, is to be adopted, then there is a clear conflict in the law itself. This second assessment was an additional assessment, and both the original act of 1879 (section 32) and the revisory act of 1885 provide that all additional assessments shall be made on the original classification; and while we do not contend that this provision in the act of 1885 applies to this former assessment, the provision in the act of 1879 certainly does.

Mr. GEORGE HUNT, Attorney General, for the appellee:

Under the original classification, some of the lands benefited were not taxed at all, and others less than their share. The new classification, under section 21 of the act of 1885, does class them properly. It is not claimed there is any injustice in this classification, but simply that lands not taxed in the first instance should not now pay any part of the cost of the improvement.

It is argued that enforcing section 21 is impairing the obligation of contracts. But there had been no contract that the lands should not pay their just share of the cost of the improvement. All laws enacted after the contracting of a valid debt by a county, etc., which, if enforced, would deprive it of the means of payment, will be void, as impairing the obligation of contracts. *Wolf* v. *New Orleans*, 13 Otto, 358; *Van Hoffman* v. *Quincy*, 4 Wall. 535; *Louisiana* v. *Pittsburg*, 15 Otto, 278; *Railway Co.* v. *People*, 116 Ill. 408.

But this does not seem to us to be the proper place to raise this objection. Following the other decisions of this court, we think it must be held that the assessment and classification having been confirmed by the commissioners, under proper notice, their decision, not appealed from, is final.

A judgment of confirmation of a special assessment is conclusive upon all lot owners whose property is assessed, as to all matters of defense that might have been interposed to prevent the confirmation, provided such owners are in court by the service of proper notice, or by voluntary appearance. *Murphy* v. *People,* 120 Ill. 234; *Railway Co.* v. *Seip,* id. 104.

Mr. Charles P. Knispel, also for the appellee.

Mr. Justice Wilkin delivered the opinion of the Court:

This was a proceeding by appellee, Baker, as collector of his county, to obtain judgment against delinquent lands and town lots for taxes, special assessments, etc. Objections were filed by appellant, but overruled, and judgment entered against his lands, and from that judgment he appeals to this court.

The facts in the case necessary to a fair consideration and decision of the question presented, are as follows: Drainage district No. 1, in the townships of Sugar Loaf and Centerville Station, St. Clair county, was organized under the act of the General Assembly approved May 29, 1879. On the 4th of April, 1885, the commissioners made an additional assessment of $28,000, payable, one-third October 1, 1886, one-third October 1, 1887, and one-third October 1, 1888. On this assessment they borrowed $26,000, issuing bonds dated October 30, 1885,—$8000 payable in two years, $8000 in three years, and $10,000 in three years and eleven months. These bonds were duly registered in the office of the Auditor of Public Accounts. Prior to April 25, 1887, appellant's lands were not assessed for benefits, but at that time a re-classification of the lands in the district was made, under section 21 of the act in force July 1, 1885, by which they were made assessable. Proper notice of this classification was given, and appellant appeared and made objections, but they were not sustained, and he took no appeal. In pursuance of the warrant of the Auditor of Public Accounts, certifying the amount needed for

the year 1887 to pay principal and interest on bonds issued by the commissioners of said district, in which amount was included $8000 and interest, being the second installment of the bonds of October 30, 1885, and the interest on the third installment thereof, a tax was levied against the lands in said drainage district, based upon the last named classification, thus causing a tax of $14.99 to be levied on appellant's lands. This he refused to pay, and hence this proceeding.

The objections filed in the county court raise the question whether or not appellant's lands can be taxed to pay any part of the bonds of October 30, 1885, the position of his counsel being, that inasmuch as his lands were not assessed for benefits at the time the assessment, on the 4th of April, 1885, was made, and the bonds issued to pay the same, they can not, by a subsequent classification, be made liable to contribute to their payment. In support of this position it is argued, that in so far as section 21 of the act of 1885 authorizes the commissioners to disregard the proportions of former assessments, and make a new classification, its provisions should be applied only to future assessments. So much of that section as bears upon this question reads as follows:

"In districts heretofore formed, which have made one or more levy of taxes, and a new levy is required, the classification of lands on the graduated scale shall be made to conform, as near as may be, to the former proportionate assessment; but if the commissioners believe, from experience and results, that the former assessment was not fairly adjusted on the several tracts of land according to benefits, then the commissioners shall disregard the proportion of the former assessment, and make the new classification in accordance with such proportions as should have been made originally. When the classification is completed, it shall be properly tabulated, or shown by a map, or both, and filed in the clerk's office for inspection."

There is nothing in this language to indicate an intention on the part of the legislature to so limit its application. It is the express purpose of the Drainage law of this State, that each tract of land in a district shall bear its equal burden, in proportion to benefits. Until the work is done and practically tested, the adjustment of benefits can only be made from judgment, based on theory and general experience. This statute of 1885 allows the commissioners to bring to their aid the experience and practical results of the system adopted and work done, and having done so, if convinced that the former assessment was not fairly adjusted on the several tracts of land according to benefits, then it is made their duty, by this act, to disregard the proportions of the former assessment, and make the new classification in accordance with such proportions as should have been made originally. It is not claimed that the classification made April 25, 1887, is unfair or inequitable; therefore, in making it the commissioners have simply done that which should have been originally done. The language, "*as should have been made originally,*" is irreconcilable with the position of appellant that both classifications are correct,—the first applicable to improvements made under the first and second assessments, and the latter only intended to apply to work to be done in the future. If the present classification is correct, the original was necessarily wrong. The present one could only be made because the former one was not made as it should have been. Clearly, it was the intention of the legislature that the re-classification, correcting the errors in the original, should take the place of the original, and thereafter there should be but the corrected one upon which to make assessments of taxes. This statute simply provides the means whereby commissioners may correct a mistake made by them or their predecessors in estimating benefits, and so understood, we are unable to perceive wherein it violates the constitutional prohibition against the enactment of laws impairing the obligation of contracts, as contended by

counsel for appellant. Appellant acquired no *rights* under the first assessment of benefits. He simply enjoyed the benefit of a mistake, which the law of 1885 afforded the means of correcting.

We find no substantial error in this record. The judgment of the county court in disallowing appellant's objections is affirmed.

*Judgment affirmed.*